IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| IN RE: | In Proceedings |
| | Under Chapter 11 |
| LANDRETH LUMBER COMPANY, | |
| JACKSONVILLE WHOLESALE INC., | Case No. 07-30466 |
| | Case No. 07-30467 |
| Debtor(s). | (Jointly Administered) |

OPINION

This matter presents the issue of whether guarantors of the debtor's obligations are collaterally estopped from asserting that language in the confirmed plan prevents a creditor from pursuing collection of a judgment owed to it by the guarantors. The guarantors have come to this Court asking for enforcement of Article VII, Section E of the plan to protect them from further collection of the judgment rendered against them and in favor of the creditor by an Indiana state court. The creditor responds that the Indiana court considered and rejected the guarantors' arguments seeking a stay of litigation in that court based on the application of Article VII, Section E, thereby precluding the Bankruptcy Court's further inquiry into the meaning of Article VII, Section E. The guarantors do not deny that the state court addressed and rejected the contention that Article VII, Section E precluded further litigation in that court. Instead, they counter that the confirmed plan has res judicata effect and that they are protected by the language of Article VII, Section E.[1]

The following facts are not in dispute. On November 24, 1992, and March 1, 2005, Landreth Lumber Company (debtor) entered into membership agreements with Do It Best Corp.

---

[1] In addition, an ancillary argument has been raised before the Bankruptcy Court that Article VII, Section E must include guarantors due to the language of Article VII, Section D. According to this argument, a major creditor of the debtor, Fifth Third Bank, would not have sought to protect its rights to pursue the guarantors, by demanding the language in Article VII, Section D of the plan, had Article VII, Section E been intended to protect only sureties and bonds, but not guarantors.

1

(creditor) pursuant to which four principals[2] of the debtor executed a continuing guaranty in favor of the creditor to assure payment should the debtor default in its obligations under the membership agreements. Subsequently, the debtor failed to perform its obligations under the membership agreements and, on March 8, 2007, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. A few months later, on May 25, 2007, the creditor filed a complaint against the guarantors in the Allen County Superior Court of Indiana, seeking a judgment for the amount due under the guaranty. Litigation proceeded simultaneously in the Indiana court and in the Bankruptcy Court. At no time in the course of the state court litigation did the guarantors ask the Bankruptcy Court to extend the protections of the automatic stay, 11 U.S.C. § 362(a), to enjoin the state court proceedings.

On November 7, 2007, the Bankruptcy Court issued an order confirming debtor's Second Amended Plan of Reorganization with a Contingent Liquidation as Modified by Order of Confirmation) (plan). The ultimate version of the plan, as modified to conform to the Order of Confirmation, was filed on November 14, 2007. Article VII, Section E of the confirmed plan states in pertinent part:

> E. Sureties
> [N]o Claim on which the Debtor was liable on the Petition Date may be asserted against any surety or bond provided by a Person other than the Debtor until the earlier [sic] of: (i) dismissal, (ii) conversion, or (iii) the Final Distribution Date. In partial consideration for this stay the Plan provides for full payment.

Although the guarantors were embroiled in the Indiana litigation at that time, they did not include in the language of Article VII, Section E protection for guarantors generally, or for themselves by name, or enjoining further litigation of the pending state court action. Neither did they, at that time, turn to the Bankruptcy Court to request the protection they are now seeking.

---

[2] The principals are O. Dean Landreth, Don H. Goebel, Francis A. Hughes, and Richard C. Landreth (hereafter, guarantors).

Instead, on December 11, 2007, nine months after the filing of the Indiana lawsuit and one month after entry of the confirmation order, the guarantors asked the Indiana court to stay the state court lawsuit, arguing that Article VII, Section E of the plan foreclosed continued litigation against them. Although misleadingly titled "Notice of Automatic Stay," their request of the state court in that "notice," and in an accompanying memorandum of law, relied upon an argument that Article VII, Section E stayed further litigation against them since Indiana law required that, as guarantors, they be protected by the suretyship language in the plan provision. The guarantors' argument before the state court was as follows:

> The Defendants request that the Court take notice of a Chapter 11 bankruptcy filing and stay this proceeding. . . . [T]he confirmed Chapter 11 Plan specifically provides that actions against sureties shall be stayed during the pendency of the bankruptcy case. *See* Order Confirming Plan, p. 33 ¶ E, attached to the Notice of Bankruptcy Stay. A surety is "a person who is liable for the payment of a debt or performance of a duty of another person." As cited in *Irish v. Woods*, 864 N.E. 2d 1117, 1121 (Ind. Ct. App. 2007) [sic]. Indiana courts have recognized "that the words 'guaranty' and 'guarantor' are synonyms for 'suretyship' and 'surety,' respectively." *Yin v. Society National Bank of Indiana*, 665 N.E. 2d 58, 64 (Ind. Ct. App. 1996); See also *Farmers Loan & Trust Co. v. Letsinger*, 652 N.E. 2d 63, 66 (Ind. 1995); *Irish v. Woods*, 864 N.E. 2d at 1121. Additionally, Ind. Code § 26-1-1-201(40) defines "surety" to include "guarantor." The Defendants, as guarantors, are also considered sureties that are protected by the terms of the confirmed Chapter 11 Plan. As such, the court must take notice of the Chapter 11 bankruptcy filing and stay this proceeding.

Memorandum of Law in Support of Defendants' Notice of Bankruptcy Stay, Dec. 11, 2007, at p. 1-2.

The creditor countered before the state court that Indiana law draws a distinction between the definition of a surety and that of a guarantor, holding that a surety is simultaneously liable with the principal on the principal's debt while a guarantor is secondarily liable. Since the plan

language unambiguously referred to only a surety or to a bond, the creditor argued that its protection could not be extended to stay the litigation against the guarantors.[3]

On January 8, 2008, after conducting a hearing on this issue, the Indiana court entered an order denying the guarantors' request for an "automatic stay." There is no indication in the state court record presented to this Court that the order of January 8, 2008, was appealed. Then, on March 24, 2008, the state court entered an order granting the creditor's motion for summary judgment, entering judgment jointly and severally against the guarantors. The guarantors had not filed a response to the motion for summary judgment, and there is no indication in the state court record presented to this Court that they appealed the judgment.

Nonetheless, during April and May, 2008, the guarantors came to the Bankruptcy Court seeking interpretation and enforcement of Article VII, Section E to enjoin the creditor's efforts to collect the judgment. The guarantors claim that since both Illinois and Indiana treat sureties and guarantors as being equivalent, the provision protects them even though guarantors are not expressly described in the provision. To further bolster their interpretation of Article VII, Section E, they rely on language in Article VII, Section D of the plan which states:

> D. Cure and Remedies
>     Any party asserting the Debtor, Reorganized Debtor, or Landreth have failed to comply with the terms of the Plan shall notify the Reorganized Debtor of the alleged Plan breach in writing. The Reorganized Debtor shall have fifteen (15) days following the giving of that written notice to respond and, if applicable, cure any breach of the Plan. No action shall be taken to enforce a Plan provision, or seek a remedy for the default in a Plan provision, until the expiration of fifteen (15) days following written notice of the alleged breach.
>     In the event of an uncured breach of one or more terms of the Plan by the Debtor, Reorganized Debtor and/or Landreth, parties in interest may seek the

---

[3] The creditor addressed a second argument in the state court, not germane to the issue before this Court, that the Indiana Court should not exercise the extraordinary remedy of extending the automatic stay of 11 U.S.C. § 362(a) to non-debtor parties, such as the guarantors, to protect them from continued litigation. From the state court record presented to this Court, it does not appear that the guarantors were attempting to argue that the stay of 11 U.S.C. § 362(a) was a source of protection for them.

> conversion to a case under Chapter 7 of the Bankruptcy Code or pursue their available State Court remedies.
>
> Following an uncured Event of Default, **the Bank shall be entitled to:** (i) pursue all of its State law rights and remedies against the Debtor; and (ii) **pursue all of its State law rights and remedies against O. Dean Landreth, Frank Hughes, Don Goebel, and Richard L. Landreth, including but not limited to, its rights under the Guarantees.** Upon the death of any Grantor, the Bank shall not be precluded from seeking to recover against that Guarantor's estate.

(Emphasis added). The guarantors contend that this provision proves that Article VII, Section E was meant to include guarantors since Fifth Third Bank would not have insisted upon the emphasized language had guarantors been afforded no protection in Article VII, Section E.

The Court turns first to the question of whether the guarantors are collaterally estopped from having the Bankruptcy Court examine the meaning of Article VII, Section E of the plan. If this question is answered in the affirmative, the Court need not address the guarantors' arguments that their favored interpretation of the provision is correct and that it has *res judicata* effect.

In considering the preclusive effect of a state court order, a federal court applies the law of collateral estoppel of the state in which the order was entered. *In re Tapper*, 123 B.R. 594, 601 (Bankr. N.D. Ill. 1991) (citing *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 482 (1983)). Therefore, Indiana's collateral estoppel law is applicable to the present case. In Indiana, collateral estoppel bars relitigation of an issue that was necessarily adjudicated in a former suit and is presented again in a subsequent lawsuit. *Sullivan v. American Cas. Co. of Reading, Pa.*, 605 N.E.2d 134, 137-138 (Ind. 1992). Under the modern approach followed in Indiana, there is no longer adherence to the "rigid requirements of mutuality and identity of parties." *Id.* at 138. Rather, the court considers "whether the party against whom the prior judgment is pled had a full and fair opportunity to litigate the issue and whether it would be otherwise unfair under the circumstances to permit the use of collateral estoppel. *Id.*

Applying the modern approach to the instant case, the Court finds that the guarantors are barred from relitigating the issue of whether the suretyship language of Article VII, Section E protects them from further collection action by Do It Best Corp. The litigation in state court involved the same parties whose motions are now before the Bankruptcy Court, all of whom were represented by counsel in the state court. After the plan was confirmed, the guarantors turned to the state court seeking a stay of further proceedings against them based on the suretyship language of Article VII, Section E of the plan, which they claimed, by definition, protected guarantors as well as sureties. The guarantors had a full and fair opportunity to litigate the issue in the state court and did, in fact, fully litigate the issue in that forum. They have not argued to the contrary. When the state court entered an order refusing to stay the litigation and, later, entered summary judgment in favor of the creditor, the guarantors appealed neither order. Instead, they brought the identical issue to this Court in an effort to obtain a more favorable result. Although the state court record suggests that the guarantors did not argue the impact of Article VII, Section D on the meaning to be ascribed to Article VII, Section E, they had a full and fair opportunity to assert such an argument before the state court. They are now foreclosed from reopening the question of whether Article VII, Section E protects guarantors by the state court's determination that it does not.

Moreover, it is notable that, in the Bankruptcy Court, the guarantors have not addressed the merits of the creditor's assertion of issue preclusion but instead, have resorted to an argument that their interpretation of the plan language has *res judicata* effect. Of course, this argument has already been precluded by the final determination of the state court on the meaning of the plan provision. Since the state court had concurrent jurisdiction to interpret a provision of the

confirmed plan as a matter of contract law,[4] the Rooker-Feldman doctrine[5] prohibits a collateral attack by the guarantors on the state court order. *See Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

For the reasons stated, the guarantors' motions to enforce, or to construe and interpret Article VII, Section E of the plan, are denied.

SEE WRITTEN ORDER.

ENTERED: August 19, 2008                   /s/ Kenneth J. Meyers
                                           UNITED STATES BANKRUPTCY JUDGE

---

[4] A confirmed plan constitutes a contract between the parties, with the plan terms describing their rights and responsibilities. *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F3d 753, 755 (7th Cir. 2002).

[5] The doctrine is "generally stated as precluding lower federal courts from exercising appellate jurisdiction over state court judgments, even when the state court judgments are erroneous." Susan P. Johnston, *Application of the Rooker-Feldman Doctrine in Bankruptcy Cases*, 15 Norton Journal of Bankruptcy Law and Practice 341, 344 (2006).